**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 5, 2022

Senior Judge Sterling Johnson, Jr.
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

               Re:      *United States v. Tambhia Tucker*, No. 18-cr-119

Dear Judge Johnson,

     When Tambhia Tucker was just 23 years old, he committed this crime, shooting a gun during a robbery. He feels terrible about what he did and is making no excuses for his "immature and selfish actions." (Tucker letter). [1] As he describes it:

> I want to apologize. But how do you apologize for shooting someone? I ruined my life and almost took someone else's life. I had been trying to find the easy way out instead of working hard. That is not the way I want to be when I go home.[2]

     This is his only felony conviction. When he arrived at MDC in 2018, his longest previous sentence was 17 days. Now, his mandatory minimum and guideline sentence is 10 years. Mr. Tucker has written a moving letter to your Honor about his understanding of why he committed this crime and what he is doing to ensure he would never do so again. As he writes:

> I know that my prior actions do not present a case for someone who is trying to do better in life; but although my history may lead someone to see me in that light, I am a caring individual and one

---

[1] Attached to this letter are letters from Mr. Tucker, his mother Quanda Newton, his sisters Zantanesha Newton, Kynnice Foxworth (née Tyson), and Dijonais Tucker, certificates from MDC courses, and objections to the presentence report.

[2] Conversation at MDC on May 3, 2022.

1

> who wants to have a family and live a more quiet existence… My faults, to date, have sidetracked my longer-term ambitions of family and happiness…[But I have] done what I can during the most troubled times imaginable while incarcerated during COVID and used them to create a stronger foundation for the rest of my life.
>
> - Letter from Mr. Tucker.

He has already seen the worst of being incarcerated, from losing heat and electricity during the polar vortex to being sick during COVID, to having his shoulder dislocated by a guard, eating moldy food, and wearing dirty clothes. In this context, I respectfully urge your Honor to find that ten years is the appropriate sentence.

**Mr. Tucker's chaotic childhood, devoted fatherhood, and work at self-improvement.**

Tambhia Tucker has 22 brothers and sisters. He was raised by his mother, a factory worker. She was and is a loving and devoted mother, but she had to work essentially around the clock to provide for the family, and was rarely home. As Mr. Tucker described it during the PSI, "we watched ourselves." Young Tambhia was in charge of taking care of his younger sister Kynnice, doing parental tasks like waking her up, cooking her breakfast, and getting her to school, even though he was only four years older than she was. He did a good job – she views him as a father figure she can count on. Tambhia's own father was largely absent and wouldn't "know what was happening with [Tambhia] physically, mentally, or most critically…emotionally." (Tucker letter). Mr. Tucker would see his dad only rarely and was left trying to figure things out on his own. As he realizes today, Mr. Tucker "clearly did not do a good job of self-management." (Tucker letter).

His mother moved the family often, and Mr. Tucker rarely finished a year of school at one place. He fell behind in reading when no one realized he needed glasses in the second grade, and eventually dropped out of school. Only while incarcerated at MDC, has he started enjoying reading, asking for books often.

Despite this upbringing, at the time of his arrest, Mr. Tucker was a committed, single father, raising his young son. As Mr. Tucker describes it:

> In my first discernable act of maturity, in 2012, I began raising my son as a single parent. I excelled and loved every minute of it….It was a proud time in my life. I was proving to myself that what my

2

father did to me was not how I was going to be…every day left special memories. I gave the best of me to another human being – and one that counted on me for life. (Letter from Mr. Tucker).





His mother and sister echo those sentiments. His mother says that "He did everything for ███. He did the night feedings, day feedings, teaching him to talk, reading to him, taking him to the doctor." Zantanesha explains that Mr. Tucker was "a responsible, stand-up father," who "became more compassionate, more empathetic, more dedicated" as he cared for his son.

When Mr. Tucker was arrested, his son went into foster care. For months after his arrest, Mr. Tucker's main concern was how he could help his son get placed in Mr. Tucker's mother's custody. In January of 2019, however, a court-ordered DNA test revealed his son was not his. This crushed Mr. Tucker, who was and is "heartbroken." PSR ¶ 30. The "hole in [his] heart and soul will never be filled." (Letter from Mr. Tucker).

He had no outlet to deal with his feelings of anger, despondency, and hurt. It was only then, about one year into his incarceration, that he began getting into disciplinary trouble at MDC. PSR 11. Today, three years later, he recognizes that he suffers from anger management problems, and has been actively working to address them. PSR ¶ 39. He recently completed an anger management program at MDC and had begun a stress reduction program. *See* Attached MDC certificates. He has been practicing yoga and working with Federal Defenders Social Worker Elba Torres-Perez to learn coping skills and identify and avoid triggers. He has relished getting tools to help him with anger he has felt since a young boy, and is clearly proud when he successfully uses them. As he wrote to your Honor:

> I must enact the change for me – because there is no serum to make it happen or 5 minute psyche session that has a magic pill. I have spent some very low emotional days…at MDC…I looked at myself in a way I have never done before. I wasn't sure I liked what I saw

3

> – but I did have quiet time (in my head) for the first time in my life to think about how I got here.

During his PSI, he explained that his son is in foster care, and that Mr. Tucker would adopt him immediately if he was able to. Mr. Tucker explains: he "retain[s] memories of the love [he] provided ▬▬▬ and lives a better life because of it."

**Mr. Tucker's youth and the extreme conditions at MDC support a 10-year sentence.**

At the time of the crime, Mr. Tucker was only 23 years old, with a brain that had not fully matured. He is aware of that, and describes it this way:

> I am actually a flawed, but self-aware person who is seeking remedies to change…at most times over the last years – prior to this current incarceration – I was making strides in that positive direction; not every day, but strides…
>
> I am a young man…but what I know today is that there are contributing factors to my immature acts. (Tucker letter).

The Supreme Court has explained that: "Immaturity at the time of the offense conduct is not an inconsequential consideration… While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant." *Gall v. United States*, 552 U.S. 38, 58 (2007). The United States Sentencing Commission defines "youthful offenders" as those 25 and younger because "most researchers reference 25 as the average age at which full [brain] development has taken place." U.S.S.C., Youthful Offenders in the Federal System 1, 7 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf. Research shows that the brain's prefrontal cortex, responsible for executive functioning, "continues to change prominently until well into a person's 20s," and does not fully mature until at least the age of 25.[3]

The Court should take Mr. Tucker's relative youth into account in sentencing him.

---

[3] *E.g.* J. Giedd, "The Amazing Teen Brain," 312 Sci. Am. 32, 34 (2015); *see* A. Cohen et al., "When Does a Juvenile Become an Adult? Implications for Law and Policy," 88 Temp. L.Rev. 769 (2016); R. Henig, "What Is It About 20-Somethings?," N.Y. Times (Aug. 18, 2010), https://www.nytimes.com/2010/08/22/magazine/22Adulthood-t.html.

Mr. Tucker has also seen the worst of MDC. As he writes, he "struggled mightily." (Tucker Letter).

In 2019, he was detained during a period when the jail was unable to provide habitable conditions. For an entire week in January and February of 2019, during the sub-zero temperatures of a winter "Polar Vortex," the jail went without power and heat. *See* Annie Correal, *No Heat for Days at a Jail in Brooklyn Where Hundreds of Inmates Are Sick and "Frantic*,*"* N.Y. Times, Feb. 1, 2019, *available at* https://nyti.ms/2sXCIQg; Complaint, *Scott v. Quay*, 19-cv-1075 (MKB) (E.D.N.Y. Feb. 22, 2019), ECF No. 1. Mr. Tucker endured days of darkness, his cell illuminated only by the limited daylight that crept through the windows, and was denied hot food, or additional blankets or warm clothing, despite the frigid air inside the facility. He explains: the "sub-freezing conditions allowed me to wonder if I was supposed to freeze to death in my sleep (without heat or proper blankets)." (Tucker Letter).

Then, COVID hit and his life "reached the lowest of lows of inhumanity."(Tucker Letter). For months and months and months, he was locked down. There was brown water, dirty cells, no showers, and expired food. At times he found the fear of the disease and the stress of being locked down almost "too much" to handle. In calls in February 2021, he described feeling a "high risk of dying" and like he had no "fighting chance." During the worst of the pandemic in Spring 2020, his shoulder was dislocated when officers stormed his cell. PSR ¶ 38. Mr. Tucker was taken to the hospital and then given a sling to wear. PSR ¶ 38. Two years later, his shoulder still hurts. PSR ¶ 38.

The lockdowns and quarantines dragged on for over a year. Then, just as COVID lockdowns started to lift, in February 2022, a national lockdown started. Again, Mr. Tucker got no hot meals, and mice had eaten through his baloney sandwiches. Recently, Mr. Tucker (and his unit mates) were not given any changes of clothes, requiring him to wear the same dirty jumpsuit for a full week.

Judges have described the incarceratory conditions during COVID as "inhumane," what one "associates with a third world country," ones that "nobody in detention … should have to endure," and "pretty dire." *United States v. Tiffany Days*, 19-cr-0619, (April 29, 2021 SDNY) (describing the conditions at MCC and MDC as "significantly worse than any time that anyone thought possible in the last 400 years in

5

a federal jail in America"); *United States v. Ozols*, 16-CR-692, Dkt. 234 (JMF) (Feb. 12, 2019 SDNY); *United States v. Carbajal-Rios*, 19-cr-163 (Sept. 13, 2021 EDNY).

Sentencing judges have granted leniency for those incarcerated during COVID-19, acknowledging that the unusual harshness of incarceration during these times diminishes the retributive or deterrent need for a longer sentence.[4] This Court should do so too. The Court should weigh these abject conditions to which Mr. Tucker was subjected when determining the "total harm and benefits to prisoner and society" that additional imprisonment will yield. *United States v. D.W.*, 198 F. Supp. 3d 18, 23 (E.D.N.Y. 2016); *see Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case"); *United States v. Francis*, 129 F. Supp. 2d 612, 619-20 (S.D.N.Y. 2001) (reducing sentence in acknowledgment of "the qualitatively different, substandard conditions to which the Defendant was subjected" in pretrial detention).

\* \* \*

Despite all of this, Mr. Tucker's time at MDC has not been wasted on him. As he explains his growth while incarcerated:

---

[4] *See e.g.*, *United States v. Woodford*, No. 18-cr-654 (EDNY 2021) (imposing below-guideline, 70-month sentence for conviction of ammunition, using attempted murder guideline, where numerous shots were fired at the victim from close range); *United States v. Colon*, No. 15-cr-317 (EDNY Nov. 20, 2020) (imposing 18 months, consecutive to defendant's 18-month state sentence, where bottom of guidelines was 100 months); *United States v. Piper*, No. 18-cr-008 (EDNY June 25, 2020) (time-served sentence where defendant had served approximately 24 months and bottom of guidelines range was 63 months); *United States v. Hendryx*, No. 18-cr-478 (EDNY May 22, 2020) (departing downwardly 25% from bottom of guidelines range in felon-in-possession case); *United States v. Jorge Soto,* 19-cr-903 (SDNY Mar. 19, 2021) (60-month sentence where bottom of the guideline range was 110 months); *United States v. Browning,* 20 Cr. 002 (SDNY Mar. 17, 2021 (50-month sentence where bottom of the guideline range was 70 months); *United States v. Garcia*, No. 19-cr-593 (SDNY Dec. 3, 2020) (48-month sentence where bottom of guidelines range was 110 months); *United States v. Cirino*, No. 19-cr-323 (SDNY July 21, 2020) (10-month sentence where bottom of guidelines range was 57 months). *See also United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) ("pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures").

> I disappointed my mother and my father. I lost a lot of family time in here. I lost a lot of time for myself in here; time I could have used to get my life together. But I've sat down and learned so much in here.[5]

His sister Zantanesha can "hear the change in his voice," and sees his growing maturity. As his mother says, "The way that he talks now is different. He's hurting, but he knows he has to pay for what he has done. He is growing." His letter to your Honor shows his new introspection and desire to change.

As his sister Dijonais puts it, this case will not be his "life story." Mr. Tucker has plans for the future. He has goals to improve himself in prison, by getting his GED, learning how to weld, and writing novels (he has a flare for storytelling and has already mapped out the plots for two books, with the goal of finishing one before his prison sentence ends). And he has goals for when he gets out, to work in a gym or a restaurant, with a dream of owning his own franchise one day. As Mr. Tucker puts it: "I have a lot more of that in me (much more of the good than bad) and cannot wait to move forward to a better ending in life." (Letter from Mr. Tucker). When he is released, he has family who will support him.

Mr. Tucker recognizes that he committed a serious crime and deserves a serious sentence. But, as his sister explains, "This crime is not him….[I]t's not who he is." He is the "light" of their family, who offers his time and unconditional love anytime his siblings, nieces, or nephews need it. (Letter from Dijonais Tucker). Under these circumstances, I respectfully urge your Honor to sentence Mr. Tucker to 10 years of incarceration.

Sincerely,

_____/s/_____
Allegra Glashausser
Assistant Federal Defender
Federal Defenders of New York
(212) 417-8739
allegra_glashausser@fd.org

---

[5] Conversation at MDC on May 3, 2022.

# Exhibits

- Letter from Tambhia Tucker
- Letter from his mother Quanda Newton
- Letter from his sister Zantanesha Newton
- Letter from his sister Kynnice Foxworth (née Tyson)
- Letter from his sister Dijonais Tucker
- Certificates from MDC courses
- Objections to the presentence report

```
TRULINCS  71358050 - TUCKER, TAMBHIA - Unit: BRO-J-A
------------------------------------------------------------------------------

FROM: 71358050
TO:
SUBJECT: Sentencing letter
DATE: 03/12/2022 02:14:17 PM
```

The Honorable Sterling Johnson Jr.
US District Courthouse -- EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

Dear Judge:

I know that you are familiar with my case and my actions, so I am writing to Your Honor to tell you about me, the person who is front of you for sentencing, hoping you do not see me as another statistic without a future. I know that my prior actions do not present a case for someone who is trying to do better in life; but although my history may lead someone to see me in that light, I am a caring individual and one who wants to have a family and live a more quiet existence. Please do not mis-understand anything I explain about my life, below, as an excuse for the immature and selfish actions that brought me to Your Honor's Courtroom. There are none...and I know that.

Your Honor has surely seen hundreds of individuals who would be difficult to differentiate from me in your Courtroom; whether it be based on criminal history or repeat offenses, but I am different. I am actually a flawed, but self-aware person who is seeking remedies to change my life's trajectory -- unlike many I have spent incarcerated time with. At most times over the last few years -- prior to this current incarceration -- I was making strides in that positive direction; not every day -- but strides. I know that this set back has caused great consternation for me and the people who love me -- but it has been a time of reflection unlike any other I have lived. I am a young man, one who sees that there are great things ahead for me. My faults, to date, have sidetracked my longer-term ambitions of family and happiness. What I know today is that there are contributing factors to my immature acts. They are rooted in my anger issues that I have struggled with since childhood. I have seen countless numbers of people who pretend to be caring therapists tell me where my instantly diagnosed anger comes from -- and how to deal with it. They want to medicate me into La-La land instead of digging into the root issues. In the incarcerated world, I am really just another check-the-box number to their daily work. In the last four years (since my February 2018) -- I have realized the truth of it. I must enact the change for me -- because there is no serum to make it happen or 5 minute psyche session that has a magic pill. I have spent some very low emotional days since the pandemic started at MDC in solitary living conditions for weeks and months at a time. I looked at myself in a way I have never done before. I wasn't sure I liked what I saw -- but I did have quiet time (in my head) for the first time in my life to think about how I got here.

Your Honor, I grew up in a poor family but with a Mom who loved me and struggled in life to do everything she could for me and my siblings. I was blessed in that sense -- although our daily struggles without a father present took its toll on me mentally I have spent a lot of years effectively "on the streets" looking for the same male influence most kids my age were getting at home. That made school a tough place to be -- often filled with the cruel ridicule other kids can bring on other kids who are "different"; under any definition of it. None of my differences in that regard led me to the root of my anger. I have done days of painful self-reflection to see that my lack of fatherly influence in the home left me vulnerable. Yet -- that alone is not what fires me up and leads to emotionless decisions. I realized that my father's choice to have 15 (or more) children with other women (away from my Mom) has made me feel significantly less important as a human being. When most kids my age were facing troubles, they were either re-directed (for the positive) by their fathers, or even better, their fathers intervened on their behalf to cool down the problems. For me -- I felt so insignificant in my father's life that he didn't know what was happening with me physically, mentally, or most critically....emotionally. Left without guidance that could have made a difference, I was on my own the majority of the time to just figure it out. I clearly did not do a good job of self-management or diagnosis. Without someone to help, I continued down a bad path -- no matter how hard I tried on the surface to just fix myself without ever knowing what my real problem was.

In my first discernable act of maturity, in 2012, I began raising my son as a single parent. I excelled and loved every minute of it. My son's mom was incarcerated and left me in the unique role. It was a proud time in my life. I was proving to myself that what my father did to me was not how I was going to be. The next five years were never easy, but at that point in my life, every day left special memories. I gave the best of me to another human being -- and one that counted on me for life. I never had such amazing inner feelings of self-worth and levels of self-esteem. Yet -- when I got into troubles in 2017, I was devastated. My son and I were given DNA tests. I found out he was not my biological son. I experienced emotional lows that are still indescribable today. That hole in my heart and soul will never be filled. The challenge I faced was how I was going to deal with it. Some days were alright while others were bad, very bad. I questioned how this could happen to me and why God would put me through this after all of the love I provided selflessly. I searched for a long time and prayed that there would be

TRULINCS 71358050 - TUCKER, TAMBHIA - Unit: BRO-J-A
--------------------------------------------------------------------------------

better days ahead. Even though I am no longer part of his life -- I will always have solace in my actions during that special time.

After experiencing the daily violence of MDC and the 2019 power outage when sub-freezing conditions allowed me to wonder if I was supposed to freeze to death in my sleep (without heat or proper blankets) -- I struggled mightily. While barely having the time to recover from that surreal experience and mental challenge to simply not "check out" -- I slowly re-gained my confidence, in me, while the chaos of MDC (a third world living environment) influenced every aspect of daily existence (barely a life). Then -- the COVID pandemic set in and life reached the lowest of lows of inhumanity. I had come to grips with my anger; by realizing its roots and dealing with it heads-up. Yet -- MDC would never be considered the bastion of care to rehabilitate anyone from a disease or trauma. It is just the opposite -- and understaffed in every aspect as Courts have acknowledged.

So -- with renewed help from God during my lowest times the last few years of 24/7 lockdowns, I have forgiven my father and moved forward to better myself with the resources I have: at this point, just me and God. Just like any disease (in my case anger), I have relapses when I feel pushed. Being incarcerated, and caged like an animal for the last two pandemic lockdown years, has proven the most difficult in my life. In contrast, Your Honor, I am proud to say that whether my record reflects it or not, I am feeling emotionally strong for the first time in my life. And -- I am doing it with inner strength and God.

Your Honor, I have not met a single person who knows the details of my life (even in MDC) who has ever wanted to change histories with me. That is enough to depress the strongest of will -- but when someone like me (with my past) needs to present strength, I exhaust my will daily. To someone else, the reflection of my life may seem like a curse -- and maybe they would be right -- but I have now tried to use the experiences (as low as some of them have been) to anchor my recovery and live a better life. I know that I have penance to pay for my actions in my current case, and I will with integrity. After that -- and with God's strengths and guidance, I will continue down that path I was on when I was raising God's gift: my first son -- whether he was my biological son or not. I know that he will retain memories of the love I provided him and live a better life because of it. I have a lot more of that in me (much more of the good than bad) and cannot wait to move forward to a better ending in life.

I appreciate you taking the time to read about me, a formerly troubled person, who has done what I can during the most troubled times imaginable and used them to create a stronger foundation for the rest of my life: a productive one.

Sincerely, Tambhia Tucker

Your Honor Johnson,

I Quanda M Newton the mother am writing this letter of reference for my son Tambhia Nunu Tucker who is pleading guilty to the charges that he has been charged.

I feel strongly about Tambhia and about his future and I want to try to make you feel the same way. Tambhia is a person of good morals and respect, I realize that is hard to believe given the circumstances but it is true nonetheless. I have seen Tambhia be placed in a single father situation, where the mother came to my home and drop the child off to me, when Tambhia was informed of what was done he came to receive the child(████). Tambhia had the child from 5 month old to 4 years old. He did everything for ████ He did the night feedings, day feedings, teaching him to talk, reading to him, taking him to the doctor. He only learned ████ wasn't his in jail. Not only is he in jail dealing with the wrong decisions that he made to support this child, he also has to deal with losing him, the only other person that he 100 percent loved beside his family.

Tambhia has made mistakes and is accepting and dealing with the misstates that he made. I know that he has learned a lesson behind this case. The way that he talks now is different. He's hurting, but he knows he has to pay for what he has done. He is growing. He needs for you to give him an opportunity for a chance to get things done that he is willing to get done. He wants to get his GED, get a job, and fight to get ████ back. I have been looking into programs in North Carolina that help people with felonies to be able to move forward in a positive way in society. I his mother recognize that Tambhia has broken the law and has to sentence I just hope that with the power you wield with regard to his future of this young man and make a fair decision.



Quanda M Newton

May 4, 2022

Dear Judge Johnson,

    I am Tambhia Tucker's oldest sister. He is one of my closest brothers. When I was 18, Tambhia and I moved in together in North Carolina. We lived together for a few years, just the two of us. When we lived together, Tambhia would take care of my four daughters while I worked. (My oldest daughter is now 11 and the youngest is now 7). He would pick them up from school, help them with their homework, run errands, and do everything our family needed. When Tambhia was arrested I had to hire a babysitter to care for them. They miss him being around – we all do.

    Once ▮ moved in with us, ▮ became Tambhia's main focus. He took care of him from when he was the infant until he was around four years old. He took him to the doctor, he changed him, he fed him, he started the process to enroll him in school. As ▮ got older, he set appropriate rules from. Being a father changed Tambhia. Tambhia became more compassionate, more empathetic, more dedicated. He was a responsible, stand-up father. He was very concerned about ▮. Once Tambhia found out ▮ wasn't his, it crushed him completely. He shut down.

    This crime is not him. I know he made a mistake, but it's not who he is. He's not that brother. This case is a lesson learned for him. I have heard the change in his voice: he sounds older, and more mature. I pray that he is able to come home and do what he wanted to do: go back to school, get a job, get his certificate for construction. I know that he will bring it back around to the person we know him to be. I will be there to help him do that when he is released.

Zantanesha Newton

May 4, 2022

Dear Judge Johnson,

    Tambhia is my older brother. My mom had a bunch of kids, so the older kids had to take care of the younger ones. Growing up, he did all the big brother things for me: he would make sure I woke up on time, cook breakfast, take me to the bus for school. We had ever had any fights and he kept me on track. He was always a good person to talk to, now too – we talk on the phone. I tell him everything about my life. Really he is more like a father figure to me. When he got arrested, I was really sad.

    Now, when we talk, we mostly talk about my school. I am one of the first of my siblings to get my associates degree and now I'm getting my bachelor's degree. I hope to get a master's degree too. Tambhia is always telling me how proud he is of me. He has been talking to me about the books he has been reading and how he's trying to do well inside.

    I also lived with him when he was raising ▮. He loved ▮ so much. They went to the park all the time. He did everything and anything he could for him. He always made sure ▮ had what he needed. Having ▮ pushed him.

    The crime isn't like the big brother I know. Tambhia doesn't like to ask for things; he doesn't like to be a bother. At home, he's usually really quiet.

    When he gets out, I will be there for him. He can live with me if he needed to, I would help him find a job, I would help him get back on his feet. I think he is going to be focused on doing the right thing. He's had a lot of time to think and he's going to do everything he can to do better.

    I can't wait for him to be back.

                                                          Sincerely,

                                                           Kynnice Foxworth

Dear Your Honor,

My Name is Dijonais Tucker Today I am writing this letter on behalf of my brother Tambhia Tucker.

Being siblings I have known him my whole life. I hope you will take this letter into account when making your decision. I just want you to know who he is as a person and not just a criminal who is in your courtroom.

Tambhia has always been a good person he is the light in our family. loves his kids and nieces unconditionally. Me having my first child at 15 with no father my brother stepped up for my daughter he is and always will be her favorite uncle. I remember night I couldn't get rest he would come and get her from my room stay up with until the morning even though he had to make it to class the next morning. he would give a stranger the coat off his back in a freezing winter. he alway put other before him. Tambhia is also one of the greatest dads I known in my entire life. he has been through so much with his kids. at one point in time before he went away he was a single dad for his son ▇ For 5 years it was very hard for him but he made the best out of his situation.

Tambhiq made sure he had a roof over his head and very well taking care of. Even after finding out ▮ was not his child after getting a dna test he pushed for our family to get him out of fostercare due to ▮ mom neglect. So as you see my brother has been through so much and still remained the same upstanding Man he has always is.

I know he made a huge mistake and through talking to him he also knows and has made changes since he has goals he wants to achieve. Tambhiq does not want this to be his life story he will and will do better no matter what it takes.

So your honor I truly hope u can see my brother before you as a young man who made a bad decision who is also human loving caring giving, family oriented and deserving of a second chance.

Sincerly, Diyonais

[signature]



# MDC Brooklyn Recreation Department

This is to Certify that

## TAMBHIA TUCHER

Has Successfully Completed

Sentry Weight Management Journal

At MDC Brooklyn

This certificate is hereby issued this 8th day of February, 2022

R. Hallett
Recreation Specialist

# Certificate of Completion

Metropolitan Detention Center - Brooklyn

Brooklyn, New York

THIS CERTIFIES THAT

## TAMBHIA TUCKER

*has satisfactorily completed*

## ANGER MANAGEMENT HANDOUTS

and is hereby awarded this certificate, this 4th Day of February 2022.

_____
Dr. Steinhaus
Staff Psychologist

**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

May 5, 2022

Officer Jennifer E. Baumann
United States Probation Officer
Brooklyn, NY 11201

     Re:   <u>United States v. Tambhia Tucker, No. 18-cr-119</u>

Dear Officer Baumann,

  I am writing to respectfully note the below corrections to Mr. Tambhia Tucker's pre-sentence report:

- The PSR notes Mr. Tucker's arrest date as February 9, 2018 and states that he has been in custody since the "date of arrest." PSR 1. In fact, however, Mr. Tucker has been in custody for this case since November 14, 2017, when his local NJ sentence of 14 days ended, and he remained in custody on a federal hold. As this time between November 14, 2017 and February 9, 2018 did not count to any other sentence, it should count towards his sentence for the instant offense. Thus, I respectfully request that the PSR note that Mr. Tucker has been incarcerated on this offense since November 14, 2017.

- Upon his release, Mr. Tucker plans to live with his mother, Quanda Newton, ████████████████████████████████. Accordingly, please note this address on page 2 of the PSR.

- Mr. Tucker's mother is 49 years old and his brother Zantwon Tucker is 31 years old.

- Paragraph 18 of the report states that Mr. Tucker had "probation violation warrants outstanding at the time he committed the instant offense." That does not appear to be accurate because the instant

offense was committed on August 14, 2017 and paragraphs 14 and 15 indicate that the probation warrants were filed on October 10, 2017.

- Paragraph 21: This case has been dismissed and the bench warrant terminated. Accordingly, please update the disposition of the case.

- Additionally, with respect to paragraph 21, we objection the inclusion of the line that the "arrest report notes the defendant being identified as a Bloods gang member." There is no verification of this prejudicial information and it should be excluded.

We respectfully request that the PSR be modified to reflect this information.

Respectfully submitted,

_____/s/_____
Allegra Glashausser
Assistant Federal Defender
Federal Defenders of New York
(212) 417-8739
allegra_glashausser@fd.org